**Ex parte Lester Ray LEWIS.**

No. 60649.

Court of Criminal Appeals of Texas, Panel No. 2.

May 30, 1979.

Rehearing Denied Oct. 24, 1979.

Paul G. Ferguson, Huntsville, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and ODOM, JJ.

## OPINION

ROBERTS, Judge.

This is a post-conviction application for habeas corpus relief. The judge of the convicting court held a hearing and made findings of fact and conclusions of law (including a conclusion that relief should be granted).

On November 3, 1977, the district court appointed an attorney to represent the applicant. On the same day, the applicant pleaded guilty to an information charging him with murder, and he was sentenced to confinement for a term from five years to life. The applicant did not appeal. Before

(and at the time of) the trial, the district attorney had a copy of a letter from a psychiatrist to an attorney in Trinity County, who was not the attorney who represented the applicant at trial. (The petition alleged that the applicant originally was arrested and charged in Trinity County, but it was later determined that that was not the proper venue. We do not regard this unproved allegation as a fact; we merely mention it for clarification.) The attorney who represented the applicant at trial was not made aware, by the State or by any other source, of the existence of the psychiatrist's letter. We quote from the letter:

"Re: Psychiatric Examination of Lester Ray Lewis—34 Year Old White Male Seen in Groveton Jail September 22, 1977 on Court Order of District Judge Joe Ned Dean

"This man was seen and gave a reasonably coherent history of events leading up to his arrest and the incident involving the man he is charged with killing. He was quick to say the man had called him a homosexual and this had led to a fight which had resulted in the man he is charged with having killed [sic]. He described the events of that date as being unavoidable because the man had threatened to kill him with a knife.

\* \* \* \* \* \*

"Patient recalled that he attended public school in Huntsville, quit school in the fourth grade. He is not able to recall his age but he had a great deal of difficulty learning and apparently never learned to read or write. He was thought to be mentally retarded and on at least two occasions was sent to school for the mentally retarded. Although he did not himself discuss this it was learned from his attorney that he had also been in the State Hospital at Rusk on several occasions. He did admit to going to Rusk at least once after he attempted suicide several years ago but he denied being seen by the psychiatrist there.

"At interview this young man is considered to be in contact with reality. He

is aware of the fact that he has been placed in jail and that it has something to do with the death of a man he was 'fighting with'. He does not appear to comprehend the seriousness of the crime that he has been charged with. * * * Patient is definitely paranoid and his paranoid ideas are exhibited in the fact that he feels that people are talking about him as being homosexual. He has hallucinatory experience a great deal of the time and his hallucinations involve people talking about him as being homosexual or threatening to harm him. * * *

"In my opinion this man has a schizophrenic reaction of the chronic undifferentiated type manifest by paranoid ideas, marked impairment to comprehend much of what is going on about him. There is some question that he may have been moderately intoxicated on the day in question but his reasoning today while sober would make his behavior quite understandable on the day in question without explaining his behavior as being intoxicated.

"There is some question that he might also have an organic brain syndrome since he does have 'black-out spells'. It would be nice if an EEG could be arranged unless he had one on a recent admission to the Rusk Hospital. It is doubtful that this man can be held accountable for his behavior and if he is to live outside an institution he will require treatment for his schizophrenic illness. He would require treatment but it is my opinion that he needs to be hospitalized in a psychiatric hospital such as the maximum security unit at Rusk at least for the time being."

The letter raises questions of the applicant's sanity at the time of the alleged offense, and of his competency to stand trial.

■ The applicant does not claim that the prosecutor willfully suppressed the letter, nor is it necessary for him so to claim, for the withholding of evidence favorable to the accused denies due process irrespective of the good faith or the bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "It shall be the primary duty of all prosecuting attorneys . . . not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused." V.A.C.C.P., Article 2.01. "[T]here are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request [from a defendant]." *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

■ The State argues that the non-disclosure of favorable information is important only in contested cases like *Agurs.* We cannot agree. The overriding concern is whether a defendant has been deprived of due process and due course of law. See *Agurs,* supra, at 108, 112, 96 S.Ct. 2392; *Ransonette v. State,* 550 S.W.2d 36, 40 (Tex. Cr.App.1977); *Means v. State,* 429 S.W.2d 490 (Tex.Cr.App.1968). The requirement of due process and due course of law extends to guilty pleas as well as to contested cases. See *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Ex parte Shuflin,* 528 S.W.2d 610 (Tex.Cr.App.1975). The conviction of an accused person while he is legally incompetent violates due process and due course of law. *Bishop v. United States,* 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); *Ex parte Hagans,* 558 S.W.2d 457 (Tex.Cr.App.1977). The very arraignment and plea of an incompetent person is constitutionally invalid. See *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (dictum). Such a constitutional error is not waived by a defendant's silence. *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). If anything, the denial of due process and due course of law would be greater than in a contested case if an incompetent defendant were permitted (as the applicant was) to waive such constitutional and statutory rights as an indictment, time to prepare for trial, the presumption of innocence, the compulsory production of witnesses, the

confrontation and cross-examination of witnesses, trial by jury, the right not to be compelled to incriminate himself, time to move for a new trial, and an appeal. Therefore, we hold that, like exculpatory evidence, information about the incompetence of a defendant can be of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request from the defendant. Accord, *Ashley v. Texas,* 319 F.2d 80 (5th Cir.), certiorari denied, 375 U.S. 931, 84 S.Ct. 331, 11 L.Ed.2d 263 (1963). Further, we hold that the prosecutor's duty to disclose favorable information (whether relating to the issue of competence, guilt, or punishment) extends to defendants who plead guilty as well as to those who plead not guilty.

 The omission to disclose testimony that is favorable to a defendant must be evaluated in the context of the entire record. *United States v. Agurs,* supra. In this case, the information in the psychiatrist's letter contains strong indications that the applicant could have raised a defense of insanity. The letter also indicates that the issue of incompetence to stand trial should have been explored. We think that if the applicant's counsel had been aware of this letter he would not have agreed, on the first day he was appointed and without investigation, to a plea of guilty for a life sentence. The harm is clear.

The State argues that the prosecutor's duty to disclose extends only to favorable information unknown to the defense, and it points out that the applicant knew that he had seen a psychiatrist. It would be anomalous to hold that the (concededly) illiterate, mentally retarded, alcoholic, and (according to the psychiatrist) psychotic applicant had a duty to tell his counsel that there was available evidence of his insanity and incompetence.

██ The State offered evidence that the prosecutor's policy was to open his file to defense counsel whose clients were pleading guilty, and it seems to imply that the applicant's counsel alone was responsible for his ignorance of the psychiatrist's letter.

There was no evidence that the policy was, in fact, applied in this case. The State has not shown that it discharged its duty to disclose the evidence.

The applicant was not afforded due process and due course of law. The judgment and sentence cannot stand.

It is ordered that the applicant be released from confinement under the sentence entered by the 12th Judicial District Court in Cause 11,999 and that he be remanded to the custody of the Sheriff of Walker County to answer the information filed in that cause.

DOUGLAS, Judge, dissenting.

A majority of the panel sets aside this conviction because the prosecutor at the time of the trial did not show the then defense counsel a copy of a letter or report of a psychiatrist to counsel who was representing Lewis before the trial. The district attorney received a copy of the letter and gave it to the first attorney for Lewis. At the trial different counsel represented Lewis.

The following is the testimony concerning the letter by the then district attorney, the Honorable Erwin Ernst:

"... I am District Attorney of the County of Walker, State of Texas, and was the District Attorney when Lester Ray Lewis entered a plea of guilty in his case. It is the policy of this office when a plea of guilty is arranged and the Court appoints a lawyer to allow the lawyer complete access to the State's file. I have talked to Lawyer Murphy in—relating to this and he advises me that he did not peruse the file and I have no reason to believe that he did, if he advises me that he did not. I do not have any independent recollection whether he did read the file or if he didn't read the file."

Lewis knew about the psychiatric examination and testified about it at the habeas corpus hearing.

The State's file was available to defense counsel. The district attorney did not have any independent recollection if counsel read the file or not.

Lewis had not shown that he did not tell his counsel of the examination. Apparently there was no question in the mind of counsel for Lewis that he was not incompetent to stand trial.

The record shows that Lewis knew of the examination and he discussed it at the hearing. He testified rationally.

Darrell White, Sheriff of Walker County, testified at the hearing that he had known Lewis for fifteen years. He testified that Lewis had been convicted for robbery in 1969. He had talked to Lewis while awaiting the habeas corpus hearing and he was just about like he was fifteen years ago and he knows what you are talking about.

The Honorable James F. Warren, District Judge at the time of the hearing, testified that he knew Lewis some ten years before accepting his plea of guilty and he never thought that he was insane and he did not seem any different on the date of the trial.

Lewis testified that he was given a psychiatric examination in Trinity. He related that he was not incapable at the trial. He was not asked by his counsel if he told his trial attorney about the examination.

The evidence at the hearing does not show a suppression of the evidence. A hearing should be held to determine if petitioner was competent to stand trial.

In *Brandon v. State* (No. 59,348, April 25, 1979), there were errors in the hearing on the competency to stand trial. This Court remanded for another hearing to determine if Brandon was competent at the time of the trial to assist his counsel in making a rational defense. There is no need to set aside the conviction on the statement in the letter about his condition at the time of the commission of the offense.

### OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

On original submission we held that applicant was denied due process and due course of law by the State's failure to disclose to his trial counsel a letter from a psychiatrist that contained "strong indications that the applicant could have raised a defense of insanity," and that indicated "the issue of competence to stand trial should have been explored." It was further held that information about incompetence, just as exculpatory information, must be disclosed even without a specific request by the defense, and that this rule applies to defendants who plead guilty with the same force as to those who plead not guilty.

On rehearing the State argues that an intelligent and voluntary guilty plea waives all non-jurisdictional defects, including violations of due process and that applicant has not contended that the plea was involuntary or unintelligent. The State contends that applicant may be accorded relief only if he alleges and proves that he was in fact incompetent at the time of his guilty plea, or that the plea was otherwise made unintelligently or involuntarily, and urges that the cause be remanded to allow applicant to attempt to sustain his burden on that issue.

A careful examination of the original application for habeas corpus relief reveals that applicant has alleged that his plea was not knowingly and intelligently made. A denial of due process by the failure to disclose the psychiatrist's letter was alleged as the underlying factual basis for applicant's request for relief, and was the issue focused on by the district court. The concluding paragraph of the habeas corpus application, however, draws together that allegation with the attack on the plea and asserts:

"The conclusion that can be drawn from the above cited authority as applied to the facts [are] as follows: (1) that the prosecutor did not reveal to Mr. Murphy the existence of evidence which tended to prove that Petitioner was incompetent to stand trial and which was known to him; (2) that said evidence was so material, that it placed the State under a duty to disclose absent any request; (3) and that said failure to disclose was not only material as to competency, but also material as to whether Petitioner's guilty plea was knowingly and intelligently made."

Our opinion on original submission resolved the first two points of this three step argument in favor of the applicant. We further held that the rule requiring disclosure of favorable evidence applies with equal force in a guilty plea case as in one where the plea is not guilty. Although we did not explicitly state that the guilty plea was not voluntarily and intelligently made, such a conclusion is implicit in the conjunction of our holding that due process was violated by the failure to disclose the favorable information with our holding that such failure violates due process even in guilty plea cases.

In *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108, the issue was "whether a defendant may enter a voluntary plea of guilty to a charge of second-degree murder without being informed that intent to cause the death of his victim was an element of the offense." The Court held that as a matter of law such a plea could not be voluntary in the constitutional sense because the defendant had not received real notice of the charge against him, a fundamental requirement of due process.

Such a denial of due process before entry of a guilty plea cannot be waived by that plea, but to the contrary, as a matter of law renders the plea involuntary. Just as a defendant must have real notice of the charges against him before his plea may be voluntary, a defendant and his attorney cannot make an intelligent decision on whether to plead guilty when they have not received favorable information that is in the State's file to which they are entitled. We therefore hold that a showing of the State's failure to disclose favorable information before entry of a guilty plea leads as a matter of law to the conclusion that the plea was not knowingly and intelligently made. Appellant having made such a showing, we hold that as a matter of law his guilty plea was not knowingly and intelligently made.

The State's motion for rehearing is overruled.