**Fernando A. VILLARREAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–91–598–CR.**

Court of Appeals of Texas,
Corpus Christi.

June 30, 1993.

Rehearing Overruled Aug. 31, 1993.

---

David Fast, Corpus Christi, for appellant.

Thomas Bridges, Patrick Flanigan, Sinton, for appellee.

Before KENNEDY, DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

KENNEDY, Justice.

Appellant Fernando A. Villarreal, Jr. appeals from his conviction of carrying an illegal knife on school grounds. He originally pleaded guilty to the offense and received five years' deferred adjudication probation. Less than a month later, the State moved to adjudicate Villarreal's guilt. He was found incompetent to stand trial and was committed to Vernon State Hospital. Later, he was found competent, and pleaded true to the State's motion for adjudication. The trial

court found him guilty and assessed punishment at five years' confinement.

Villarreal raises eleven points of error; most attack the procedures surrounding the finding that he was competent to stand trial, both at his original guilty plea and at the adjudication of guilt. We affirm the conviction.

Villarreal was arrested for intentionally and knowingly carrying an illegal knife while on the Odem High School campus on September 25, 1990. Three days later, a San Patricio County deputy escorted a shackled Villarreal to Dr. Dick Bohannon, who conducted a psychiatric examination for the Texas Rehabilitation Commission to determine whether Villarreal could manage his own Social Security disability benefit funds. The TRC had scheduled this appointment in August, well before Villarreal was jailed. Dr. Bohannon found that Villarreal was not capable of managing his funds. Eight days earlier, neurologist Dr. Ernesto Guido had determined that Villarreal had the intelligence to manage his benefit payments. Though Villarreal's mother knew of these examinations, she did not tell Villarreal's counsel and he did not learn of them until December 1990.

On November 9, 1990, Villarreal pleaded guilty while represented by counsel. Counsel noted Villarreal's epilepsy, but stated that he believed Villarreal was competent to stand trial and sane at the time of the offense. The court asked Villarreal about his medication and its effect on him. Villarreal said the medication did not affect his knowledge of what was going on, though it did slow him down. He specifically denied psychiatric problems and stated that he understood what was occurring at the plea. He was placed on five years' deferred adjudication probation.

The State moved to adjudicate guilt on November 21, 1990, because it learned that Villarreal had stolen freon from an Odem store. Villarreal sought and was eventually granted a psychiatric examination and a determination of competency. In January 1991, Dr. Gilbert Maldonado conducted a court-ordered psychiatric examination and concluded that Villarreal was not competent to stand trial, but could attain competence with treatment. Dr. Ernest Deitch conducted a similar examination in February 1991 and reached similar conclusions regarding competence to stand trial. A jury made findings in accord with Drs. Maldonado and Deitch. The judge committed Villarreal to the Vernon State Hospital.

Villarreal filed a motion to vacate his original guilty plea on February 20, 1991. The court denied that motion on April 18, 1991. We dismissed Villarreal's appeal of that denial, filed in June 1991, for want of jurisdiction.

Villarreal was declared competent to stand trial by the Vernon State Hospital and returned to San Patricio County in July 1991. At the hearing on the motion for adjudication on October 7, 1991, the court asked defendant questions, observed his behavior, took judicial notice of the report of competence, and declared him competent. Villarreal's counsel refused to comment on his client's competence. The court again asked Villarreal if he understood what just happened; he said yes. The court then asked him where he was going to go, Villarreal responded, "Prison." Villarreal withdrew his motion regarding present competency, his motion to vacate the original proceeding, and his motion for psychiatric evaluations.

Villarreal appeals various actions by the trial court in eleven points of error.

■ By points of error three and four, Villarreal challenges the trial court's failure to vacate his original guilty plea. Such motions were denied in April and September 1991, and one was withdrawn at the final plea in October 1991. Villarreal contends under point three that the State should have disclosed the TRC exam by Dr. Bohannon because it would have raised the issue of his competency. See *Ex parte Lewis*, 587 S.W.2d 697, 699–701 (Tex.Crim.App. [Panel Op.] 1979). Villarreal's case does not fit within the facts of *Lewis*. In *Lewis*, the prosecutor possessed a letter from a psychiatrist that discussed the defendant's various mental problems. *Id.* at 699–700. The psychiatrist conducted the examination under court order in connection with the murder charge to which Lewis pleaded guilty in the case. The letter talked about Lewis's sanity at the time of the offense, and touched on

issues relevant to competence to stand trial. *Id.* at 699. Lewis's original attorney received a copy of the letter, but his trial counsel did not. *Id.* at 701. The court held that such withholding of evidence amounted to a denial of Lewis's federal and state constitutional rights to due process and due course of law. *Id.* at 700. The court held that Lewis's knowledge of the examination was not sufficient to undo the harm of the nondisclosure because the court would not require an incompetent person to inform his lawyer of his incompetence. *Id.* at 701.

Villarreal, by contrast, was examined at a previously scheduled TRC examination, not by court order. The purpose of the exam was to see if Villarreal could handle his benefit funds, not whether he was competent to stand trial. There is no indication that the prosecutor possessed a copy of the psychiatrist's report or even knew of the examination. There is no indication that the sheriff's office knew of the result of the exam. Villarreal's mother knew of the examination since she went with him. She also knew of Villarreal's history of mental problems.

Though in some instances we impute knowledge of certain facts by peace officers to prosecutors, we will not do so under these facts. We will not impute to the prosecutor knowledge of a question regarding the defendant's competence based on a deputy's escort of a defendant to a non-court ordered psychiatric exam previously scheduled for purposes unrelated to the charge at hand. We will not find that the prosecutor withheld information regarding the result of such an examination where, as here, there is no evidence that the prosecutor had any knowledge of the examination or its result. We overrule point three.

■ By point four, Villarreal claims that [t]he trial court's actions and rulings with regard to appellant's competency, mental illness, and mens rea do not pass muster with the U.S. and Texas constitutions under the due process and equal protection clauses, because appellant was prevented from showing that his earlier plea of guilty was improper and while appellant's attorney admitted the earlier plea was a mistake, the trial court and the state's attorney refused to admit or correct their earlier mistake regarding appellant's plea.

We do not find any action by any state actor preventing Villarreal from raising these issues at the trial level. On the contrary, the court held a hearing on his competency at which he was found incompetent to stand trial. He was committed to a state hospital, determined to be competent, and found competent by the trial court. The court twice overruled Villarreal's motions to vacate the guilty plea.

■ As for mens rea, though this issue was not raised at trial, it appears that Villarreal had the proper state of mind to commit the offense of which he was found guilty. The statute provides that a person commits an offense if, with an illegal knife, he intentionally, knowingly, or recklessly goes on the premises of a school. TEX.PENAL CODE ANN. § 46.04(a) (Vernon Supp.1993). Villarreal's contention that he took the knife to school to fight demons that plague him does not defeat the requisite state of mind. As for Villarreal's final assertion, we know of no relevant constitutional provision requiring either the court or the prosecutor to admit to a mistake unless such mistake is pointed out or evident, and is harmful. We overrule point four.

■ Villarreal raises a related issue in point of error seven. He contends that, after the jury found Villarreal incompetent to stand trial on the adjudication, the trial court should have determined when Villarreal was last competent and vacated his original arraignment and guilty plea on the basis of incompetence. We find no duty on the trial court to *sua sponte* examine retrospectively defendant's competence at his previous plea. At any rate, the trial court confronted this issue when denying Villarreal's motions to vacate the guilty plea. We overrule point seven.

■ Similarly, the trial court did not err, as Villarreal asserts in point of error eight, by failing to connect the lack of appellant's competency with appellant's lack of mens rea for the original offense. We find no duty on the trial court to *sua sponte* examine retrospectively whether defendant possessed the culpable state of mind during an offense to

which he has already pleaded guilty. Further, this issue was raised and rejected in the court's consideration of the motions to vacate the guilty plea. We overrule point eight.

By point of error eleven, Villarreal asserts that the trial court should not have denied his motions to vacate his guilty plea as untimely filed. *We* refused, on the basis of untimely filing, to review his appeal of the trial court's denial of his motion to vacate, but the record does not disclose that the trial court made such a ruling. The trial court disclosed no basis for its denial of the motions, either at the hearings, in its letter to the parties, or in its orders. We overrule point eleven as not supported by the record.

Villarreal contends by points of error five and two that the trial court erred in denying his motions for a psychiatric examination and for a competency hearing after his release from the state hospital. Villarreal does not point out where in the record these alleged denials occurred. His first motions were eventually granted. Villarreal explicitly waived motions for a psychiatric examination and competence hearings at time of the final adjudication hearing. We overrule points two and five.

■ By point of error one, Villarreal contends that the trial court erred in finding him competent. He claims that this was true especially since there never was any showing of any interruptions in appellant's mental illness that would supersede the jury's finding of incompetency, appellant claiming that the finding of incompetency applies retroactively to the commission of the offense and without any interruption in his mental illness, applies prospectively until the final adjudication and sentence of appellant.

The court followed the statutorily mandated procedures. *See* TEX.CODE CRIM.PROC.ANN. art. 46.02 (Vernon Supp.1993). The jury's finding that Villarreal was incompetent, but likely to attain competency to stand trial,

required the court to proceed under § 5 of the statute and commit him to a state facility for examination and treatment. TEX.CODE CRIM.PROC.ANN. art. 46.02 §§ 4(g) & 5(a) (Vernon Supp.1993). Upon discharge of the defendant from the state facility, the court can make a determination of the defendant's competency based solely on the report unless a party objects to the findings of the report within 15 days of the time the report was served on the parties. We have held that commitment based on a jury finding of incompetence, followed by discharge from the facility, terminates the presumption of incompetence. *Martin v. State,* 714 S.W.2d 356, 357 (Tex.App.—Corpus Christi 1986, no pet.).[1]

■ The court was within its power to make the competency decision based on the report because there is no indication in the record that any objections were timely made to the Vernon State Hospital's finding that Villarreal was competent to stand trial. The court nevertheless asked Villarreal several questions at the adjudication hearing. Villarreal's answers and his demeanor while responding supported the report's conclusion and persuaded the court that he was competent to plead. Villarreal's counsel explicitly elected to remain silent. The court did not err in finding Villarreal competent. We overrule point one.

■ Villarreal contends by point of error six that the trial court erred reversibly by failing to initiate its own investigation concerning the circumstances of his competency. Courts are required, whenever evidence of the defendant's incompetency is brought to the attention of the court from any source during trial, to conduct a hearing to determine whether there is evidence to support a finding of incompetence. TEX.CODE CRIM. PROC.ANN. art. 46.02, § 2(b) (Vernon 1979). The court had followed this procedure once, resulting in the incompetence finding, commitment, and discharge discussed above.

---

1. *Martin* is still applicable to this case despite *Manning v. State,* 730 S.W.2d 744 (Tex.Crim. App.1987). The high court in *Manning* held that an unvacated finding of incompetency shifts the burden of proof to the state to prove competency beyond a reasonable doubt. *Id.* at 749. While that case describes the burden at a hearing, it does not describe the burden when there is no hearing. As set out in the main text, the court correctly found competence without holding a hearing, therefore the burdens at hearing were not triggered.

Villarreal's point must therefore address the proceedings after his release from Vernon on July 8, 1991. On September 23, 1991, Villarreal's counsel discussed before the Hon. Alonzo T. Rodriguez a number of questions counsel had regarding Villarreal's treatment during and after his commitment to Vernon. The hearing on the motion for adjudication was continued until October 7, 1991, while Villarreal obtained documents from Vernon and attempted to subpoena witnesses. On October 7, before the Hon. Rachel Littlejohn, however, Villarreal's counsel raised none of the concerns he had raised September 23 and waived all motions that might have similarly raised the issue of competency. Counsel's silence was no evidence of incompetence to provoke inquiry by Judge Littlejohn. Even if Judge Littlejohn knew of the concerns raised before Judge Rodriguez, she would not have abused her discretion by assuming that counsel's silence and withdrawal of the motions indicated that the issues had been resolved in the period between hearings. We overrule point six.

■ Villarreal challenges the constitutionality of various sections of TEX.CODE CRIM.PROC.ANN. art. 46.02 (Vernon Supp. 1993). He urges in passing in point six that § 8(e) is unconstitutional because it "allows the psychiatrist at the state hospital to make a subjective finding of competency but does not require appearance and confrontation and cross-examination." This is not grounds for reversal. First, it is not clear that this case involved § 8(e) because that section addresses persons who have been civilly committed, whereas it appears that Villarreal was criminally committed. Second, Villarreal seeks to invoke against psychiatrists the rights that he has against those who accuse him of a crime. A psychiatrist who determines competency to stand trial has done no such thing.

■ By point of error ten he urges that the whole section is unconstitutional because it treats mental illness and mental retardation disjunctively rather than con-

junctively. He argues that this violates due process and equal protection concerns. We disagree. The portions of the statute that deal with the conditions disjunctively are those that refer to institutional placement and treatment options. *See* TEX.CODE CRIM. PROC.ANN. art. 46.02 §§ 3 & 4 (Vernon Supp. 1993). They do not deny process due the accused. The standard for incompetence, set out in § 1(a) is the same whether the person is mentally ill, mentally retarded, or both. These protect each category equally. We overrule point ten.[2]

■ By point of error nine, Villarreal contends as follows:

> It was reversible error for the trial court in its conduct of the case, to maintain an inconsistent unneutral position in the matter of appellant's attempts to overcome the erroneous finding of competency at the first guilty plea and at appellant's final adjudication of guilt, demonstrated by the inconsistencies among trial court judges and the trial court's action on appellant's attorney's fees application.

Villarreal complains that four different judges presided over the various proceedings, resulting in discontinuity and lack of familiarity by the judges with previous proceedings. He complains about Judge Littlejohn finding him competent; we have affirmed her finding. He contends that the change in judges resulted in alteration by a second judge of agreements reached with a previous judge. He states that counsel reached some agreement regarding admission of medical records before Judge Yeager. He complains that, after the prosecutor reneged on this agreement, Judge Rodriguez (who was unaware of the agreement) limited the admissibility of the records to support merely the testimony of one examining physician. Villarreal does not show that counsel had reached irrevocable, court-sanctioned agreement. He does not show that Judge Yeager would not or could not have similarly changed his decision. Most important, Villarreal shows no harm from the altered rul-

---

2. Villarreal's numerous complaints regarding the efficacy of the various state institutions—school, hospital, prosecutors, and courts—in dealing with his root problems of epilepsy, mental retar-
dation, and mental health may have some merit. We do not rule on them, however, because they do not present bases for reversal.

ing; after these hearings, Villarreal achieved the goal of his seeking examination and hearings—he was declared incompetent. We see no harmful bias here.

While having four judges sit at various times on the case may be less than ideal, it is not unexpected or unreasonable in a case with hearings spanning several months held in a five-county district. Villarreal has not shown any events specifically caused by the rotation, events that would not have occurred under a single judge. Changes in rulings and failure to remember specifics of a case are not unique to rotating groups of judges. Certainly no bias is shown.

■ Villarreal also complains that the assessment of his fees for his court-appointment shows bias. The court disallowed compensation for all but 15.5 of the 36.5 hours his counsel claimed for in-court time. The court disallowed payment for all 124.9 hours counsel claimed he spent out of court. The court wrote, "I find the amount of time spent was and is not necessary or appropriate for the problems of this defendant." Villarreal says that counsel's fee was so reduced that his counsel got the equivalent of $6 per hour. He says that the court intended by this low rate to chill his counsel from representing him. While counsel may have a complaint about his fee, the issue before us on appeal from conviction is whether Villarreal has been harmed by the fee. *Freeman v. State,* 556 S.W.2d 287, 308 (Tex.Crim.App.1977), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978). The record demonstrates that his counsel, to his credit, certainly has not been deterred from zealously representing Villarreal before us. The fee-setting does not demonstrate any bias against Villarreal that manifested itself in any error presented to the court. We overrule point nine.

Having overruled all points of error, we affirm the judgment of the trial court.