# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2022

Lyle W. Cayce
Clerk

No. 20-50331

Troy Mansfield,

*Plaintiff—Appellant*,

*versus*

Williamson County,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC 1:18-CV-49

Before Higginbotham, Costa, and Oldham, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

Troy Mansfield brings this suit under 42 U.S.C. § 1983 against Williamson County, Texas, alleging that county prosecutors denied him due process secured by the Fourteenth Amendment by lying to his counsel during plea negotiations, misconduct assertedly caused by the County's "closed-

No. 20-50331

file" policy. The magistrate judge granted summary judgment to the County, and Mansfield appealed to this Court.[1] We affirm.

## I.

On August 13, 1992, a state grand jury in Williamson County indicted Mansfield on three counts of sexual misconduct with a child. On October 26, 1992, Mansfield's defense counsel filed a motion asking the state trial court to order the disclosure of all exculpatory evidence prior to trial, consistent with *Brady v. Maryland*.[2] On May 17, 1993, the state court granted the *Brady* motion, and the next day prosecutors interviewed the victim and her mother. On June 23, 1993, a prosecutor noted in the case file that during the May 18 interview the victim made statements contradicting her prior identification of Mansfield. Specifically, prosecutors noted that the victim would "be difficult to sponsor in Court. She told me she does not remember what happened! . . . Spent 2 hours [with] this witness — will be nigh impossible to sponsor her in court. At one point, told me nothing happened, then says little boy might have done it ([Mansfield]'s son)."

The prosecutors did not tell Mansfield and his counsel about the victim's contradictory statements during plea bargaining. Instead, four days before trial, facing the trigger of an extant *Brady* order, the prosecutors stated that the victim would be a strong witness at trial and that they had a doctor's statement and physical evidence corroborating the victim's identification of Mansfield. They did not. The prosecutors added that the plea offer was revocable, and that Mansfield faced a sentence ranging from 99 years to life if convicted of all the charges of his indictment. With this Hobson's choice,

---

[1] This case comes to us from the ruling of a magistrate judge as the parties consented to have the case referred to a magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] 373 U.S. 83 (1963).

No. 20-50331

Mansfield accepted the offer, pleading guilty to the lesser charge of indecency with a child four days prior to his scheduled criminal trial in 1993, and spent 120 days in county jail, ten years on probation, and registered as a sex offender.[3]

Mansfield later learned of the prosecutors' false statements. In 2016, a state habeas proceeding vacated his conviction, holding that the prosecutors violated his due process rights by lying to avoid disclosing exculpatory evidence—evidence which they were under court order to produce four days later.[4]

## II.

Mansfield then sued Williamson County in federal court under 42 U.S.C. § 1983, alleging that the closed-file policy implemented by the Williamson County District Attorney, Ken Anderson, led prosecutors to violate his constitutional rights. In his complaint, Mansfield alleged that both his *Brady* and due process claims were enabled by the county's closed-file policy which prevented his attorneys from examining evidence, leading him to involuntarily plead guilty. The County moved for summary judgment, arguing that an intervening decision by this Court barred Mansfield's suit and that no county policy supported a finding of county liability.[5] The magistrate judge granted the County's motion and Mansfield timely appealed.

---

[3] One of the prosecutors later characterized the punishment recommendation as "unusually light."

[4] *Ex parte Mansfield*, No. 92-435-K277A (277th Dist. Ct., Williamson County, Tex. Jan. 19, 2016).

[5] *Alvarez v. City of Brownsville*, 904 F.3d 382 (5th Cir. 2018) (en banc).

No. 20-50331

## III.

Mansfield's argument for county liability goes as follows. In 1993, the District Attorney's office was relatively small, with only six prosecutors. The prosecutors had a reputation for not trying cases they could lose. Anderson, as the District Attorney, set the closed-file policy. Closed-file policies enable prosecutors to withhold information until trial when the obligations of *Brady* are triggered. Alternatively, under open-file policies prosecutors disclose relevant information to defense attorneys with only limited exceptions. District Attorneys can also decline to adopt either policy, instead leaving the timing and scope of disclosure to the individual prosecutor's discretion.

Mansfield then points to Anderson's past prosecutorial misconduct. As a prosecutor, Anderson engaged in unethical conduct by suppressing exculpatory evidence during the 1987 trial of Michael Morton.[6] Morton spent nearly 25 years in prison before his conviction was vacated after the exculpatory evidence and Anderson's misconduct were discovered.[7] In 2013, Anderson was convicted of criminal contempt, for which he served jail time and surrendered his law license.[8] While Anderson was not one of the three prosecutors who directly worked on the Mansfield case, half of the prosecutors in the small office did. The current Williamson County District Attorney and one of prosecutors who worked on the Mansfield case each testified that Anderson, as the District Attorney, probably knew of the unusually light plea offer to Mansfield. This was the environment in which

---

[6] *Morton v. State*, 761 S.W.2d 876 (Tex. App.—Austin 1988).

[7] *Ex parte Morton*, No. 76-663, 2011 WL 4827841 (Tex. Crim. App., Oct. 12, 2011). *See also Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820 (Tex. App.—Austin 2014) (affirming the conviction of Christine Morton's actual killer).

[8] *In re Honorable Ken Anderson (A Court of Inquiry)*, No. 12-0420-K26 (26th Dist. Ct., Williamson County, Tex. Apr. 19, 2013).

No. 20-50331

prosecutors, faced with a extant *Brady* order, lied to Mansfield and his counsel about the specific contents of a file that the prosecutors would have been compelled to disclose if the case went to trial.

## IV.

We review *de novo* a grant of summary judgment.[9] Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."[11]

## V.

For his § 1983 claim to succeed, Mansfield must show that a Williamson County policy directly caused a constitutional violation. Mansfield argues that the closed-file policy caused the prosecutors to violate his due process rights by lying about evidence they were under court order to disclose, which led to his involuntary guilty plea.

Under *Monell*, as counties are persons within the meaning of § 1983, they cannot be vicariously liable—that is a county must be the actor.[12] Mansfield needed to plead facts sufficient to show that an official county policy was the "moving force" behind his claimed constitutional violation, and that the policy was implemented with "deliberate indifference" to the

---

[9] *Alvarez*, 904 F.3d at 389.

[10] Fed. R. Civ. P. 56(a).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[12] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

known or obvious consequence that constitutional violations would result.[13] Mansfield's pleadings identified Anderson as the county policymaker and the closed-file policy as the official policy.

Where a plaintiff alleges that a municipality's policy caused its employee to deny the plaintiff's rights, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[14] The causal connection required for *Monell* liability is demanding. "Establishing a direct causal link between the [ ] policy and the constitutional deprivation is a high threshold of proof. This connection must be more than a mere 'but for' coupling between cause and effect."[15]

We need not here reach the issue of whether the prosecutor's actions violated *Brady* and Mansfield's due process rights. Even assuming that they did, Mansfield falls short of alleging either that the closed-file policy was the moving force behind the due process violation or a "pattern of injuries" suggesting that the closed-file policy caused prosecutors to lie in plea negotiations.[16] Mansfield offers only the misconduct of Anderson and another prosecutor who suppressed exculpatory evidence during the *Morton* trial five years before Mansfield's indictment.[17]

We cannot conclude that the closed-file policy caused the prosecutors to lie. Mansfield argues that the closed-file policy enabled the prosecutors to

---

[13] *Alvarez*, 904 F.3d at 389–90.

[14] *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).

[15] *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 253 (5th Cir. 2018) (internal quotations omitted).

[16] *See Bryan Cty.*, 520 U.S. at 409.

[17] *See Ex parte Morton*, 2011 WL 4827841; *Morton*, 761 S.W.2d 876.

lie, but a system that fails to prevent lying is not necessarily one that causes lying. Mansfield thus failed to create a triable issue on the causal connection demanded by *Monell*.

Why the prosecutors chose to lie is elusive. One might infer that the culture within the small office, continuing from the days of *Morton*, or personal ambition led the prosecutors to secure a guilty plea at any cost in a high priority case involving a little girl as the victim. Mansfield urges that Anderson, taking a page from *Morton*, pressured his staff to obtain convictions—not dismiss cases after indictments. And, that the plea bargain was "unusually light" compared to the possible sentence attending a conviction at the very least suggests a determined effort to avoid trial and a likely acquittal. Regardless, our issue here is *Monell* liability and we cannot conclude that the closed-file policy was the moving force that caused the prosecutors to lie. Accepting that the closed-file policy enabled the prosecutors' lies, it does not necessarily follow that it caused their misconduct. The prosecutors' underlying motivations to lie and misrepresent exculpatory evidence aside, without a direct causal link between the closed-file policy and the alleged constitutional violation, the demands of *Monell* are not met.[18]

## VI.

To the extent that Mansfield asks us to consider whether his *Brady* claim is foreclosed, we hold that it is foreclosed.

While *Brady* and its progeny necessitate that prosecutors disclose exculpatory evidence during trial, this Court's precedent has consistently

---

[18] *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

held that *Brady* focuses on the integrity of trials and does not reach pre-trial guilty pleas.[19]

Mansfield concedes this Court, sitting en banc, recently affirmed this principle in *Alvarez*.[20] *Alvarez* and the earlier case of *United States v. Conroy* held that there is no constitutional right to exculpatory evidence during plea bargaining. Mansfield argues that these cases were wrongly decided and should be reconsidered as they conflict with decisions by our sister circuits. However this argument is foreclosed; three-judge panels in the Fifth Circuit abide by controlling precedent not overruled by the Supreme Court or an en banc sitting of this Court.[21]

Consistent with *Alvarez*, we hold that Mansfield does not have a *Brady* claim for his pre-trial guilty plea. Thus, Mansfield failed to identify a violation of the Fourteenth Amendment to support his § 1983 claim.

## VII.

We AFFIRM the magistrate judge's grant of summary judgment to Williamson County as there is no showing that a county policy was the moving force behind the constitutional violation and because Mansfield's argument is foreclosed by this Court's precedent.

We pause to note the severity of the allegations here and the prosecutorial misconduct in *Morton*.[22] While Texas passed the Michael Morton Act to address the misconduct and environments that closed-file

---

[19] *See e.g. Matthew v. Johnson*, 201 F.3d 353, 361–62 (5th Cir. 2000); *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) (per curiam).

[20] 904 F.3d at 392.

[21] *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018).

[22] *See Morton*, 761 S.W.2d 876.

No. 20-50331

policies enabled, it is ultimately up to prosecutors to abide the ethical standards their stations demand. [23] They are lawyers and will be held to their common oath and the ethical standard of bench and bar in their role—judge, prosecutor, or defense counsel. Loss of a law license is a large price to pay for their breach, but small compared to the price paid by Mansfield, Morton, and others.

---

[23] 2013 Tex. Sess. Law Serv. Ch. 49 (S.B. 1611). *See also* Due Process Protections Act, Pub. L. 116-182, 134 Stat. 894 (2020) (amending FED. R. CRIM. P. 5 to require the judge to issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady*).

No. 20-50331

Patrick E. Higginbotham, *Circuit Judge*, joined by Gregg Costa, *Circuit Judge*, concurring:

I write separately to accent the difficulties attending the *Brady* doctrine in its present form.[1] As the Supreme Court has observed, "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas."[2] The reality is "that criminal justice today is for the most part a system of pleas, not a system of trials."[3] The law's toleration of the conduct of these prosecutors is to these eyes inexplicable.

While *Brady* and its progeny would have required the prosecutors to disclose exculpatory evidence to Mansfield at trial, this Court has consistently held that *Brady* focuses on the integrity of trials and does not reach pre-trial proceedings leading to guilty pleas.[4] Our en banc court recently affirmed this principle in *Alvarez v. City of Brownsville*.[5] *Alvarez* and our earlier case *United States v. Conroy* both held that there is no constitutional right to exculpatory evidence during plea bargaining.

However, the actions of the prosecutors here are distinguishable from *Alvarez*, where there was no indication the prosecutors ever possessed or

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] *Missouri v. Frye*, 566 U.S. 134, 143 (2012).

[3] *Lafler v. Cooper*, 566 U.S. 156, 170 (2012).

[4] *See Matthew v. Johnson*, 201 F.3d 353, 361 (5th Cir. 2000); *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) (per curiam).

[5] 904 F.3d 382, 392 (5th Cir. 2018) (en banc).

No. 20-50331

knew of exculpatory evidence, as the police never presented it to them.[6] Here, the prosecutors directly frustrated the protection *Brady* affords defendants. The prosecutors made notes in their file detailing exculpatory evidence, fully aware of their obligation to disclose should no plea deal materialize before trial. Under the shadow of the *Brady* order, the prosecutors sought to secure a plea and avoid disclosure at trial. In the state habeas proceeding, the State conceded that the prosecutors' lies, directly contradicted by documents they were under order to produce, denied Mansfield due process.[7] In my view, this shielding of exculpatory evidence violated *Brady* and denied the constitutional right to process it seeks to protect.

Limiting *Brady*'s reach to trial ignores the reality of the excesses of an unchecked adversary system. To guarantee due process in the modern criminal justice system, *Brady* must at least reach a prosecutor's intentional decision to withhold exculpatory evidence in pre-trial plea bargaining. The line between impeachment and exculpatory evidence may in concept be thin at the margins. Yet that line is often distinct as with an essential witness or physical facts such as DNA or fingerprints of another—not the accused— and in any event, genuine uncertainties may be answered by the default of produce. The point is that we cannot look away from uncertainties within the processing of ninety-seven percent of the federal criminal docket as Professor, now Judge, Stephanos Bibas has laid out.[8]

---

[6] 904 F.3d at 388. *See also United Sates v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("The *Brady* obligation extends only to material evidence [ ] that is known to the prosecutor.").

[7] *Ex parte Mansfield*, No. 92-435-K277A (277th Dist. Ct., Williamson County, Tex. Jan. 19, 2016).

[8] *See* Stephanos Bibas, *Designing Plea Bargaining from the Ground up: Accuracy and Fairness without Trials as Backstops*, 57 Wm. & Mary L. Rev. 1055 (2016) ("It is even

No. 20-50331

Only the Supreme Court can fully address this signal flaw in the jurisprudence of plea bargaining, a set that processes ninety-seven percent of the federal criminal docket. We must bring exculpatory evidence within the reach of *Brady* and refuse to sanction lying by prosecutors to avoid *Brady* obligations, at the least definitively resolve the acknowledged circuit split.[9] The cold reality is that the want of certitude shadows the federal criminal dockets across the country.

---

unclear whether defendants have a right to classic *Brady* exculpatory evidence before they plead guilty."). *See also Stephanos Bibas*, *Plea Bargaining outside the Shadow of Trial*, 117 Harv. L. Rev. 2464 (2004); Stephanos Bibas, *Regulating the Plea-Bargaining Market: From Caveat Emptor to Consumer Protection*, 99 Calif. L. Rev. 1117 (2011).

[9] "The First, Second, and Fourth Circuits also seem to have doubts about a defendant's constitutional entitlement to exculpatory *Brady* material before entering a guilty plea . . . The Seventh, Ninth, and Tenth Circuits, however, recognized the possible distinction noted by the Supreme Court [ ] between impeachment and exculpatory evidence in the guilty plea context." *Alvarez*, 904 F.3d at 392–93, *citing United States v. Mathur*, 624 F.3d 498, 506–07 (1st Cir. 2010); *Friedman v. Rehal*, 618 F.3d 142, 154 (2d Cir. 2010); *United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010); *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003); *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005); *Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007); *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995). *See also Campbell v. Marshall*, 769 F.2d 314 (6th Cir. 1985) *and White v. United States*, 858 F.2d 416, 423 (8th Cir. 1988) (Decisions predating *United States v. Ruiz*, 536 U.S. 622 (2002), but which adopted a framework for determining when a defendant could challenge a guilty plea under *Brady*). For discussion of the evolution of this circuit split, *see* Michael Nasser Petegorsky, *Plea Bargaining in the Dark: The Duty to Disclose Exculpatory Brady Evidence During Plea Bargaining*, 81 Fordham L. Rev. 3599 (2013).

No. 20-50331

Gregg Costa, *Circuit Judge*, specially concurring:

The outcome of this case is yet another injustice resulting from our mistaken view that *Brady* does not require turning over exculpatory evidence before a guilty plea. *See Alvarez v. City of Brownsville*, 904 F.3d 382, 394 (5th Cir. 2018) (en banc). Troy Mansfield pleaded guilty to one of the most heinous crimes—sexual misconduct with a child—without knowing that the victim had told prosecutors that "nothing happened" with Mansfield. For the age-old question of why an innocent person might plead guilty, this case reflects a common answer: The benefit of pleading—180 days in jail plus probation versus the risk of a life sentence with a trial— was too great to pass up.

No other circuit limits *Brady* like we do. *See id.* at 411 (Costa, J., dissenting) (citing circuit decisions reading *Brady* to require the disclosure of exculpatory evidence before pleas); *id.* at 414 (noting that although some courts have questioned whether *United States v. Ruiz*, 536 U.S. 622 (2002), undermines cases recognizing a preplea disclosure requirement for exculpatory evidence, none have overruled their precedent). And state high courts addressing the issue read the federal due process right as requiring disclosure of exculpatory evidence at the plea stage. *See id.* at 406 (citing cases from five state high courts). Texas has long done so, *see Ex parte Lewis*, 587 S.W.2d 697, 701 (Tex. Crim. App. 1979), which enabled Mansfield's state habeas relief vacating his conviction. We stand alone.

I have previously explained why the consensus view of other courts is correct. Requiring disclosure of exculpatory evidence before a plea is consistent with *Brady*'s rationale, reflects that the Due Process Clause is not limited to trials (unlike many Sixth Amendment rights), and retains *Brady*'s vitality in a criminal justice system in which almost everyone pleads guilty. *See Alvarez*, 904 F.3d at 407–08 (Costa, J., dissenting).

Mansfield adds another point: One of the cases *Brady* relied on for its landmark ruling was a plea case. *See Wilde v. Wyoming*, 362 U.S. 607 (1960) (per curiam), *cited in Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Wilde* involved the suppression of exculpatory evidence before the defendant pled guilty to murder. *See Wilde*, 362 U.S. at 607. In reviewing the state habeas proceeding, the Supreme Court remanded for a hearing on the claim that prosecutors had withheld "the testimony of two eyewitnesses to the alleged crime which would have exonerated the petitioner." *Id.* The Court needed a federal issue to make that ruling in a state proceeding, so it necessarily saw a due process right to exculpatory evidence. A few years later, *Brady* confirmed this. It cited *Wilde* immediately before pronouncing that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. *Brady*'s lineage thus further rejects carving guilty plea cases out of its protections.

To be sure, *Ruiz*'s later holding about impeachment evidence has created uncertainty about whether a pleading defendant has the right to exculpatory evidence. What is not debatable is the importance of this issue in a system of pleas rather than trials. And what is not tenable is affording defendants in many jurisdictions a constitutional right to exculpatory evidence before they are deprived of their liberty while those in this circuit do not enjoy the same protection. The split on this issue begs for resolution.